In the Matter of the Construction of the Last Will and Testament of HARRY L. BROWN, Deceased.

Surrogate's Court, Clinton County, January 15, 1929.

*Allen & Allen* [*Seth S. Allen* of counsel], for the petitioner.

*Robert C. Booth*, special guardian for Robert D. Brown and Harry L. Brown, 2d, infants.

HARRINGTON, S. Decedent's will was admitted to probate by this court on April 16, 1928, after a decision was rendered deter-

mining that this court had jurisdiction in the matter. (See *Matter of Brown*, 131 Misc. 859.)

Decedent's widow, Agnes Greene Brown, is the sole executrix of decedent's estate and is the petitioner herein. The will was executed in the village of Larchmont, Westchester county, N. Y., on July 1, 1924. Testator died October 23, 1927, at Toledo, O.

From the testimony of the petitioner, it appears that the testator and the petitioner were married in New York State in 1917. Testator was an electrical engineer. His work for the past few years prior to his decease consisted mainly of editing various magazines pertaining to electrical engineering. After their marriage, the testator and the petitioner herein lived in various places within and without the State of New York until 1922, when they built a home at Larchmont, Westchester county, N. Y. This was the first permanent home they had had since their marriage. At this time the testator was employed in New York city. Both of them voted in Westchester county. They continued to reside in Westchester county until 1925, when the testator accepted a position in Mansfield, O. When the family moved to Ohio, the home at Larchmont was sold, because, as petitioner testified, it was an expensive home and the petitioner and the testator felt it would be unprofitable for them to rent it. They never purchased a home in Ohio. They continued to reside there until the date of decedent's death.

One of the children of the testator and the petitioner herein was born after the date of the execution of testator's will. The will, after devising and bequeathing all of testator's property to the petitioner herein, provided as follows: " In giving all my property and estate to my wife I am not to be understood as forgetting or neglecting my infant son, but I rely upon the affection and care of my wife for our son and have confidence and faith that my wife will do everything for our son, or any children that may be born to us, that their interests and welfare require."

The petitioner now asks this court to construe the above-mentioned provision of decedent's will, for the purpose of determining its effect upon the rights of the child born after the will was executed, pursuant to section 26 of the Decedent Estate Law. However, before such construction can be made, it is first necessary to decide whether the will must be construed according to the laws of Ohio or the laws of New York.

All of decedent's estate consisted of personal property. It is a settled rule in this country that the distribution of personal property must be made in accordance with the law of the place of testator's domicile, and this is true whether the transmission

is by a last will and testament, or by succession upon the owner dying intestate. (*Parsons* v. *Lyman*, 20 N. Y. 103; *Moultrie* v. *Hunt*, 23 id. 394; *Cross* v. *U. S. T. Co.*, 131 id. 330, 339.)

Section 10561 of the General Code of Ohio reads as follows: " If the testator had no children at the time of executing his will, but afterward has a child living, or born alive after his death, such will shall be revoked, unless provision has been made for such child by some settlement, or he is provided for in the will, or in such way mentioned therein as to show an intention not to make such provision. No other evidence to rebut the presumption of revocation shall be received."

This section is very similar to section 26 of the Decedent Estate Law of the State of New York, and it would appear that, if the above was the only law in Ohio pertaining to this subject-matter, it would make no difference upon the rights of the parties herein whether the will was construed according to the laws of Ohio or the laws of New York, although it must be construed according to the laws of the place of testator's domicile. However, section 10563 of the General Code of Ohio reads as follows: " When, at the time of executing his will, a testator has a child absent and reported to be dead, or having a child at the time of executing the will, afterward has a child who is not provided for therein, the absent child, or child born after executing the will, shall take the same share of the estate, real and personal, that he would have been entitled to if the testator has died intestate."

It will be seen that the above section covers the facts in this case, for the testator did have one child at the time of the execution of his will, attempted to provide in his will for after-born children, and later had another child. This section was construed by the Supreme Court of Ohio in *German Mutual Insurance Co.* v. *Lushey* (66 Ohio St. 233). In that case there was a child living at the time the wife made her will, leaving all of her property to her husband. Later another child was born. The will contained this provision: " Should any child or children, we having now only one, George Gabriel, be born to me hereafter, it shall in no wise alter or revoke this will and testament." Notwithstanding this provision, the court held that what is now section 10563 of the General Code controlled, and that the second child took under the provisions of that section, the first child taking nothing. At the same time, the court mentioned the apparent conflict or inconsistency of what are now sections 10561 and 10563. I mention the law of Ohio on this matter to indicate the importance of determining whether the testator's domicile was in Ohio or in New York.

I am satisfied from the testimony offered by the petitioner

herein that at the time the testator moved to Ohio his domicile as well as his residence was in the State of New York. Did he change his domicile by moving to Ohio?

One of the leading cases defining domicile is *Dupuy* v. *Wurtz* (53 N. Y. 556). The court states (at pp. 561, 562) as follows:

" To effect a change of domicil for the purpose of succession there must be not only a change of residence, but an intention to abandon the former domicil, and acquire another as the sole domicil. There must be both residence in the alleged adopted domicil and intention to adopt such place of residence as the sole domicil. Residence alone has no effect *per se*, though it may be most important, as a ground from which to infer intention. Length of residence will not alone effect the change. Intention alone will not do it, but the two taken together do constitute a change of domicil.    *   *   *

" The question what shall be considered the domicil, of a party, is in all cases rather a question of fact than of law.   *   *   *   With respect to the evidence necessary to establish the intention, it is impossible to lay down any positive rule. Courts of justice must necessarily draw their conclusions from all the circumstances of each case, and each case must vary in its circumstances; and moreover, in one a fact may be of the greatest importance, but in another the same fact may be so qualified as to be of little weight.   *   *   *

" In passing upon such a question, in view of the important results flowing from a change of domicil, the intention to make such a change should be established by very clear proof   *   *   *.

" The intention may be gathered both from acts and declarations. Acts are regarded as more important than declarations, and written declarations are usually more reliable than oral ones."

In *Matter of Newcomb* (192 N. Y. 238) the law of domicile was fully discussed and the court states what evidence is necessary to establish proof of domicile. The court states (at pp. 250–252) as follows:

" As domicile and residence are usually in the same place, they are frequently used, even in our statutes, as if they had the same meaning, but they are not identical terms, for a person may have two places of residence, as in the city and country, but only one domicile. Residence means living in a particular locality, but domicile means living in that locality with intent to make it a fixed and permanent home. Residence simply requires bodily presence as an inhabitant in a given place, while domicile requires bodily presence in that place and also an intention to make it one's domicile.

" The existing domicile, whether of origin or selection, continues until a new one is acquired and the burden of proof rests upon the

party who alleges a change. The question is one of fact rather than law, and it frequently depends upon a variety of circumstances, which differ as widely as the peculiarities of individuals. Less evidence is required to establish a change of domicile from one State to another than from one nation to another. In order to acquire a new domicile there must be a union of residence and intention. Residence without intention, or intention without residence is of no avail. Mere change of residence although continued for a long time does not effect a change of domicile, while a change of residence even for a short time with the intention in good faith to change the domicile, has that effect. * * *

" Intention may be proved by acts and by declarations connected with acts, but it is not thus limited when it relates to mental attitude or to a subject governed by choice. As we have seen, a person may select and make his own domicile and no one may let or hinder. He may elect between his winter and summer residence and make a domicile of either. The right to choose implies the right to declare one's choice, formally or informally as he prefers, and even for the sole purpose of making evidence to prove what his choice was. Such declarations are not self-serving in an improper sense, unless they are made with intent to deceive. If they are false and made for a sinister purpose, they will meet the fate that falsehood always meets in courts of justice when discovered by the triers of fact."

The testimony of the petitioner herein is to the effect that the testator never intended to change his domicile from New York to Ohio; that his business in Ohio was regarded by him as being temporary and that on many occasions he told her that he hoped to come back to New York State as he thought there were more opportunities for him in his line of work in the city of New York than elsewhere. The petitioner's brother-in-law, C. E. Hamilton, of Chazy, N. Y., testified to a conversation had with the testator at his home in Ohio, about six months prior to his decease. At this time the testator advised Mr. Hamilton that while he had a good opportunity in Ohio for his line of work, he believed greater opportunities were available to him in New York, and that eventually he intended to return there. Petitioner also offered in evidence, without objection, several affidavits from friends and business associates of the testator, all of whom in substance declared that the testator had advised them on many occasions that he intended to return to New York State, as he believed there were better opportunities for him in New York city than elsewhere, and that he intended to resume his residence at Larchmont. To none of these persons did he ever express any intent of making his domicile or permanent residence in the State of Ohio. He retained his

membership in the Engineers Club in the city of New York, and his business took him to New York city at least once a month during all of the time that he resided in Ohio.

As above mentioned, there would seem to be no question but that testator's domicile as well as his residence was in the State of New York at the time he moved to Ohio. There is no proof offered that testator ever intended to change his domicile, but to the contrary all the proof is that testator intended eventually to return to the State of New York. As mentioned in the above cases, domicile requires residence in a particular locality, together with the intent to make it a fixed and permanent home. I believe that the element of intent to make the State of Ohio the permanent home of the testator is lacking in this case. Whether testator's domicile has been changed from New York to Ohio is a question of fact, and the evidence offered in regard to this matter is such as to indicate to my mind that the testator never intended to make his domicile in the State of Ohio. I believe that the testator's domicile at the time of his decease was in the State of New York, and that, accordingly, his will must be construed in accordance with the laws of this State.

Section 26 of the Decedent Estate Law reads as follows: " Whenever a testator shall have a child born after the making of a last will, either in the lifetime or after the death of such testator, and shall die leaving such child, so after-born, unprovided for by any settlement, and neither provided for, nor in any way mentioned in such will, every such child shall succeed to the same portion of such parent's real and personal estate, as would have descended or been distributed to such child, if such parent had died intestate, and shall be entitled to recover the same portion from the devisees and legatees, in proportion to and out of the parts devised and bequeathed to them by such will."

Can it be said that the child of the testator born after the date of the execution of his will was " in any way mentioned in such will," so as to bring the case within the terms of the above statute? I believe the paragraph of decedent's will in question as heretofore mentioned is sufficiently broad to come within the terms of the statute, for he not only mentions his infant son, but also " any children that may be born to us." In *Stachelberg* v. *Stachelberg* (124 App. Div. 232, 234; affd., on opinion below, 192 N. Y. 576) the court states as follows: " It is not sufficient that the will should show that the testator had in mind the possibility of children born after the making of the will. The child will take unless it is mentioned in some way or included in some class that is mentioned."
I believe the phrase " or any children that may be born to us,"

is descriptive of a class in which the child of the testator born after the execution of the will is included.

A very similar case to the one in question is that of *Wormser* v. *Croce* (120 App. Div. 287). In that case the material part of the testator's will read as follows:

" Know all men by these presents that I, Prosper L. Gilbert, of the city of Albany, mindful of the uncertainty of life and being desirous of making a just distribution of my property among the members of my family, do make, ordain and declare my last Will and Testament as follows:

" *First.* Having full confidence in the discretion and justice of my beloved wife Mary, I give, devise and bequeath all my estate, real and personal, of every description whatsoever to my said wife Mary, to have and to hold the same to her and to her heirs and assigns forever, subject, however, to the payment of all my just debts and liabilities."

At page 290 of the opinion, the court held as follows:

" The word ' family ' which the testator uses to designate those to whom distribution is to be made includes, by every definition, children. Hence the meaning and effect of his will were to give the property to his wife to insure its just distribution at his death among those who should then constitute his family, that is, the children then surviving whether born before or after the execution of the will. Indeed the very method adopted by the testator to insure a just distribution after his death implies an expectation on his part that his ' family ' might then be differently constituted from the manner in which it was constituted when the will was made, for if he had had in mind no probability or possibility of after-born children he could himself have made a ' just distribution ' and not have left it to his wife to make. Our conclusion is that the after-born children were ' mentioned ' by the testator in his will, and consequently that the wife took the whole estate under the devise to her."

It would seem apparent that the word " family " as used in the above-mentioned case is not as indicative of a class that would include after-born children as the words " or any children that may be born to us " as used in the instant case. I, therefore, believe that Harry L. Brown, 2d, who was born after the date of the execution of testator's will, was sufficiently mentioned in such will, within the terms of section 26 of the Decedent Estate Law, so as not to be entitled to take any share of decedent's estate, and that all of decedent's estate should, pursuant to the terms of his will, pass to his widow, Agnes Greene Brown.

Prepare decree accordingly.